UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JIMMY BAUGH,

    Petitioner,                                              Case No. 19-10032
                                                             Honorable Thomas L. Ludington

v.

CONNIE HORTON,

    Respondent.
_____/

## ORDER DENYING WITHOUT PREJUDICE RESPONDENT'S MOTION TO DISMISS, AUTHORIZING SCHEDULING OF AN EVIDENTIARY HEARING, AND SEEKING COUNSEL

Petitioner, Jimmy Baugh, confined at the Gus Harrison Correctional Facility in Adrian, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for first-degree murder, M.C.L. § 750.316, felon in possession of a firearm, M.C.L.§ 750.224f, and felony-firearm, M.C.L. § 750.227b.

Petitioner moved for an order of the United States Court of Appeals for the Sixth Circuit authorizing the district court to consider a second or successive application for a writ of habeas corpus. The Defendant did not respond to the motion. The motion was granted on December 17, 2018. Respondent then filed a motion to dismiss the petition before this Court contending that it was not timely filed in accordance with the statute of limitations. 28 U.S.C. § 2244(d)(1). ECF No. 9. Petitioner filed a response to the motion. ECF No. 11.

**I.**

Petitioner was found guilty by a jury of multiple charges related to the shooting death of Craig Land in the Wayne County Circuit Court on January 16, 2003. He was sentenced on

January 31, 2003 to life imprisonment without parole on the first-degree murder conviction, two to five years on the felon in possession of a firearm conviction, and two years on the felony-firearm conviction.

The Michigan Court of Appeals summarized the facts of the case as follows.[1]

> The victim in this case was a disabled forty-three-year-old man who lived with his father in Detroit. One evening, the victim rode his bicycle to a nearby convenience store to purchase beer. On his way home from the store, he was shot twice and died at the hospital. Near his bicycle, the police found $29 and a bag that contained a broken beer bottle.
> Robert Kwanniewski, who is also known by several aliases, was with defendant on the day the victim was killed. Kwanniewski testified that he stole a Jeep Cherokee and returned to his home in Hamtramck, where defendant approached him with the idea to rob someone. Defendant, who was armed with a .22 pistol, needed $100 because he was short on rent. Kwanniewski claimed that he and defendant drove around, robbed one man, and spent the $50 proceeds on drinks, cigarettes, and drugs.
> Kwanniewski claimed that defendant saw the victim in the instant case that evening, and they followed him away from a convenience store. Kwanniewski claimed that he cut the victim off with the Jeep and defendant approached the victim, demanding money. Because the victim did not cooperate, defendant shot him in the right hip, and the victim threw $29 at defendant. Kwanniewski became nervous because a vehicle was approaching, and he tried to hurry defendant. Defendant shot the victim again, this time in the left chest, and he returned to the Jeep without picking up the money. While they were driving away, defendant fired two gunshots at the approaching vehicle, which then ceased to follow them.
> While incarcerated on other charges, defendant approached the police and made a statement, in which he admitted that he, Kwanniewski, and two other friends had stolen a Jeep on the day in question. Defendant asserted that he was a backseat passenger in the Jeep when Kwanniewski spotted the victim and they stopped the Jeep. According to defendant, Kwanniewski shot the victim twice because he failed to cooperate with a robbery attempt. Defendant did not remember the victim riding a bicycle.
> Defendant and Kwanniewski were arrested the following day for an unrelated carjacking. Kwanniewski spoke with the police several days after the arrest, but he did not implicate defendant and did not discuss the instant case. Several months later, defendant sent a letter to the police, requesting a meeting. Defendant discussed the instant case with an officer and made the above-mentioned statement, in which he implicated Kwanniewski. Both defendant and Kwanniewski were then charged with first-degree felony murder.

---

[1] *People v. Baugh*, 2004 WL 2412692 (Mich. Ct. App. Oct. 28, 2004).

The trial court conducted a preliminary examination, but only bound Kwanniewski over for trial.[2] Kwanniewski entered into a plea agreement with the prosecution, whereby he pleaded guilty to a reduced charge of second-degree murder in exchange for the dismissal of three unrelated stolen car cases. Kwanniewski also entered into a sentencing agreement, which provided that he serve 18-40 years instead of 270-450 months in prison. ECF No. 1 at PageID.44-46.

Direct review of Petitioner's conviction concluded on October 19, 2005 when the Michigan Supreme Court denied Petitioner's application for leave to appeal. The Michigan Court of Appeals affirmed his conviction. *People v. Baugh*, 705 N.W.2d 29 (2005).

On July 31, 2006, Petitioner filed a post-conviction motion for relief from judgment. The motion was denied by the trial court. *People v. Baugh,* No. 02-8915 (Third Cir. Ct. Crim. Div. Feb. 15, 2007). After the Michigan Court of Appeals denied Petitioner's leave to appeal, *see People v. Baugh,* No. 280250 (Mich. Ct. App. Nov. 16, 2007), collateral review of Petitioner's conviction concluded on June 23, 2008 when the Michigan Supreme Court denied Petitioner's application for leave to appeal the denial of his post-conviction motion. *People v. Baugh*, 481 Mich. 912, 750 N.W.2d 188 (2008).

On July 14, 2008, Petitioner filed a petition for writ of habeas corpus, which was denied on the merits on September 15, 2010. *Baugh v. Palmer*, No. 2:08-cv-13033, 2010 WL 3623175 (E.D. Mich. Sept. 15, 2010).

On July 29, 2016, Petitioner filed a second post-conviction motion for relief from judgment with the state trial court. The trial judge denied the motion. *People v. Baugh,* No. 02-8915 (Third Cir. Ct. Crim. Div. Jan. 27, 2017). Petitioner appealed the denial of the successive motion to the Michigan Court of Appeals. On September 15, 2017 the Michigan Court of Appeals dismissed the appeal on the ground that Petitioner was not entitled to appeal the denial

---

[2] The Court of Appeals did not explain when Petitioner was later bound over for trial.

of his successive motion for relief from judgment because the claims contained within his motion did not fall within one of the exceptions under M.C.R. 6.502(G) that would permit an appeal from the denial of a successive motion for relief from judgment. *People v. Baugh,* No. 337811 (Mich. Ct. App. Sept. 15, 2017). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied on May 29, 2018, on the ground that Petitioner failed to establish that he was entitled to post-conviction relief under M.C.R. 6.508(D). *People v. Baugh*, 911 N.W.2d 703 (2018).

Petitioner's motion to file a successive petition for writ of habeas corpus with the United States Court of Appeals for the Sixth Circuit was filed on July 26, 2018.[3] The Sixth Circuit granted the motion on December 17, 2018. *In re: Jimmy Baugh*, No. 18-1848 (6th Cir. Dec. 17, 2018). The petition was filed with this Court on January 3, 2019. ECF No. 1.

**II.**

Petitioner contends that he is in possession of newly discovered evidence that potentially demonstrates a Brady violation. The new evidence Petitioner relies on is a witness statement allegedly furnished by Ricky Sailes to Officer JoAnn Miller on March 16, 2002. The following statement refers to "Scotti Trent" and "Scottie Trent." The Michigan Department of Corrections lists Mr. Trent's known aliases, including Robert Kwasniewski. *See* ECF No. 9 at PageID.204. Respondent's motion and state court opinions spell his name as Robert Kwanniewski. ECF No. 9. The Sixth Circuit spells his name as Robert Kwasniewski. ECF No. 1-1 at PageID.164-167. Accordingly, this Court presumes the names Scotti Trent, Scottie Trent, Robert Kwasniewski,

---

[3] Under the prison mailbox rule, this Court will assume that Petitioner actually filed his motion for authorization with the Sixth Circuit on July 26, 2018, the date that it was signed and dated. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997).

and Robert Kwanniewski refer to the same person. Additionally, the Court will use the Sixth Circuit's spelling in this opinion, Robert Kwasniewski.

It provides as follows:

Q. What can you tell me about the shooting on Navara and Hayes?
A. Scotti Trent told me when I went over his house in the jeep he had bring me the night of the shooting. The 3rd. He told me we were going to put the jeep up because it was "hot" after we put the jeep up I got in another jeep with him. He told me he had shot a white guy on Navara and Hayes. He told me Jimmy was driving and they pulled up on the white guy. He said he ask him for his money he said the white guy didn't give him all of his money. The white guy started to run and Scottie shot him. After he fell to the ground the white guy gave him all the money. Then Jimmie Baugh drove off.
Q. What kind of gun did Scottie have?
A. A .22 he called Peggy Sue.
Q. What kind of jeep was it Scottie gave you?
A. 96 Cherokee. The box kind. Black.
Q. Did Scottie say how many times he shot the man?
A. No.
Q. Who was with you when Scottie told you this?
A. It was me, Jimmie Baugh and Lafayette Dearing.
Q. Where is the gun now?
A. I don't know. The last time I saw it was the night of the carjacking.
Q. Did Scottie say why he shot the man?
A. No.
Q. Did Jimmie say anything while Scottie was telling you this?
A. Jimmie said Scottie shot the guy and he drove off.

ECF No. 1 at PageID.18-19.

To succeed on a habeas petition under this theory, Petitioner must demonstrate he could not have discovered the facts earlier with due diligence and show the newly discovered facts, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(i)-(ii), (b)(3)(C). The Sixth Circuit found that Petitioner had made a prima facie showing on both prongs, so that the petition warranted "a fuller exploration in the district court." *In re McDonald*, 514 F.3d 539, 546 (6th Cir. 2008).

**III.**

"After an appellate court authorizes filing, § 2244(b)(4) empowers the district court to dismiss any claim that does not 'satisf[y] the requirements of this section.'" *Clark v. Warden*, 934 F.3d 483, 490–91 (6th Cir. 2019). Afterward, "the district court may [ ] determine that 'an evidentiary hearing is warranted,' or (more rarely) grant the petition without a hearing." *Id.*; Rule 8(a), Rules Governing § 2254 Cases. Accordingly, this Court must make its own determination of whether there is a potential Brady violation and whether Petitioner meets the AEDPA requirements for a successive petition. Only then, after the procedural requirements are met, may the Court decide the merits of the petition.

**A.**

Respondent filed a motion to dismiss Petitioner's petition based on untimeliness. ECF No. 9. As discussed below, Petitioner has filed a facially timely petition for habeas relief on the potential Brady violation. Therefore, Respondent's motion to dismiss will be denied without prejudice and an evidentiary hearing will be conducted.

**B.**

The test for a Brady claim requires, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Stricker v. Greene*, 527 U.S. 263, 281–82 (1999). In this case, the alleged statement Mr. Sailes provided to the police is favorable to the accused because this testimony, if true, could have impeached Mr. Kwasniewski's testimony that Petitioner was the shooter. The first prong is met. Second, Petitioner's trial attorney explained in his February 2016 letter that while Petitioner's file no longer exists, he does not remember a statement by Mr. Sailes and he cannot imagine not

using it during trial if he had access to it. Also, the prosecutor's office does not have Petitioner's file. Therefore, an evidentiary hearing is needed to determine the circumstances surrounding (i) the statement by Mr. Sailes to Officer Miller recounting a conversation in Petitioner and Lafayette Dearing's presence, (ii) how Mr. Sailes' came into possession of a copy of the statement, and (iii) the accuracy and truthfulness of Mr. Sailes statement. Third, Petitioner likely was prejudiced by the alleged suppression of the alleged statement due to Petitioner's inability to cross-examine Mr. Kwasniewski with Mr. Sailes' statements. The available evidence shows the possibility of a Brady violation, but more information is needed. Therefore, Petitioner meets the standard for an evidentiary hearing on the potential Brady violation.

## C.

Second, before ordering an evidentiary hearing, this Court is required to make an independent determination if Petitioner has met the qualifications for an AEDPA hearing on the basis of the petition itself. 28 U.S.C. § 2244(b)(4). The two requirements from AEDPA are whether Petitioner exercised "due diligence" in his attempt to find the new information and second, the new information "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Clark*, 934 F.3d at 495 (quoting 28 USC § 2244(b)(2)(B)(ii)).

In this case, Mr. Sailes' wife sent Petitioner a letter from Ricky Sailes in October 2013, explaining Mr. Sailes "promised to help [Petitioner] with [his] case." ECF No. 1-1 at PageID.126. Then, in December 2015 Ricky Sailes sent Petitioner an alleged copy of Sailes March 16, 2002 statement to the police. *Id.* Petitioner promptly contacted his attorney in January 2016 who told Petitioner he had no memory of Mr. Sailes statement. In February 2016,

Petitioner's friend submitted a Freedom of Information Act request to the Wayne County Prosecutor's office seeking Sailes' witness statement to police. ECF No. 1 at PageID.99. The Wayne County Prosecutor's office responded on April 20, 2016 and explained that they could not locate Petitioner's file. ECF No. 1-1 at PageID.101. Then, on July 29, 2016, Petitioner filed a second post-conviction motion for relief from judgment with the state trial court. The trial judge denied the motion. *People v. Baugh,* No. 02-8915 (Third Cir. Ct. Crim. Div. Jan. 27, 2017). Petitioner appealed the denial of the successive motion to the Michigan Court of Appeals. On September 15, 2017, the Michigan Court of Appeals dismissed the appeal on the ground that Petitioner was not entitled to appeal the denial of his successive motion for relief from judgment because the claims contained within his motion did not fall within one of the exceptions under M.C.R. 6.502(G) that would permit an appeal from the denial of a successive motion for relief from judgment. *People v. Baugh,* No. 337811 (Mich. Ct. App. Sept. 15, 2017). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied on May 29, 2018, on the ground that Petitioner failed to establish under M.C.R. 6.508(D) that he was entitled to post-conviction relief. *People v. Baugh*, 911 N.W.2d 703 (2018). Then, on July 26, 2018, he filed a motion for leave to file a successive habeas petition with the Sixth Circuit. Petitioner has demonstrated that he has diligently sought habeas relief after learning about Mr. Sailes' alleged statement.

The second requirement is to determine whether the available evidence presented by Petitioner establishes whether it is clear and convincing that "no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). In this case, Mr. Sailes' statement could have impeached the state's main witness' account of the events in question. At this stage, this Court lacks sufficient information to determine what potential

effect, if any, Mr. Sailes' statement regarding Mr. Kwasniewski would have had on Petitioner's trial. Accordingly, an evidentiary hearing is required.

Respondent argues even if Mr. Sailes statement is true, Petitioner may still be correctly convicted under an aiding and abetting theory. ECF No. 9 at PageID.208. However, in Michigan, "to convict a defendant of aiding and abetting a crime, a prosecutor must establish that '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted in the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.'" *People v. Moore*, 679 N.W.2d 41, 49 (Mich. 2004) (quoting *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999)). However, "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abetter or a principal in the second degree nor is mere mental approval, sufficient, nor passive acquiescence or consent." *People v. Burrel*, 235 N.W. 170, 171 (Mich. 1931) (quoted in *People v. Worth-McBridge*, 929 N.W.2d 285, 286 (Mich. 2019)). Further discussion on whether Petitioner would have been found guilty or acquitted based on the additional testimony is not possible without an evidentiary hearing to determine the credibility of witnesses and the authenticity of the statement itself. The Sixth Circuit has provided that when the district court has insufficient information to decide the second prong of the AEDPA test, "it is [ ] well within the district court's discretion to hold an evidentiary hearing and seek that answer." *Clark*, 934 F.3d at 497.

**D.**

28 U.S.C. § 2254, the statute under which Petitioner brings his petition, also requires Petitioner's state remedies to be exhausted for his claim to be brought in federal court. 28 U.S.C.

§ 2254(b)(1)(A). As discussed earlier, after Petitioner learned about Mr. Sailes statement to police, he filed a successive motion to amend judgment in state court and was denied. As such, Petitioner has exhausted his state remedies.

**E.**

Petitioner has established that there is a question of fact regarding a potential Brady violation that can only be resolved after an evidentiary hearing. He has also shown he exercised due diligence and the potential for clear and convincing evidence that a different result would have occurred if Mr. Sailes alleged statement was not allegedly withheld by the prosecution. Finally, Petitioner has exhausted his state remedies. As a result, an evidentiary hearing will be ordered to address Mr. Sailes' statement and his credibility.

**IV.**

Rule 8 of the Rules governing § 2254 motions provides that "[i]f an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Petitioner paid the $5 filing fee for his successive habeas petition and did not submit a copy of his prison finances. However, Petitioner explains in his letter to his trial counsel that "you were appointed counsel, to represent me in multiples cases." ECF No. 1 at PageID.93. Additionally, the letter from his trial counsel was on letterhead from the Legal Aid and Defender Association in Southeast Michigan. 18 U.S.C. § 3006A(1)(H) provides that "[r]epresentation shall be provided for any financially eligible person who–is entitled to appointment of counsel under the sixth amendment to the Constitution." Petitioner was eligible for appointed counsel at the time of his trial. Accordingly, the Court will begin the process to locate representation for Petitioner.

**V.**

Accordingly, it is **ORDERED** that Respondent's motion to dismiss, ECF No. 9, is **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that Petitioner must appear and conduct an evidentiary hearing on his Brady violation claims. Separate orders will issue appointing an attorney and setting a date for the evidentiary hearing.

Dated: February 4, 2020　　　　　　　　　　　　　　s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Jimmy Baugh** #183590, G. ROBERT COTTON CORRECTIONAL FACILITY, 3500 N. ELM ROAD, JACKSON, MI 49201 by first class U.S. mail on February 4, 2020.

　　　　　　　　　　　　　　　　　　s/Kelly Winslow
　　　　　　　　　　　　　　　　　　KELLY WINSLOW, Case Manager