UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JIMMY BAUGH,

               Petitioner,                    Case No. 1:19-cr-10032

v.                                    Honorable Thomas L. Ludington
                                    United States District Judge

SHERMAN CAMPBELL,

               Respondent.

_____/

**OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS
AND ISSUING CERTIFICATE OF APPEALABILITY**

Petitioner Jimmy Baugh, confined at the G. Robert Cotton Correctional Facility in Jackson,

Michigan, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Pet., ECF No.

1. In his pro se application, he challenges his state jury trial convictions for felony murder, MICH.

COMP. LAWS § 750.316(1)(b); felon in possession of a firearm, *id.* § 750.224f; and possession of

a firearm during the commission of a felony, *id.* § 750.227b. For the reasons stated hereafter, the

Petition will be denied.

**I.**

On December 3, 2001, the victim in this case, Mr. Craig Land, was shot to death on the

eastern sidewalk of Hayes Street, between Maddelein Street and East Seven Mile Road in Detroit.

The next day, the police arrested Robert Kwasniewski ("Lucky"), Jimmy Baugh ("Petitioner"),

Ricky Sailes ("Slick"), and Lafayette Dearing ("Laf") for an unrelated carjacking.[1] In Lucky's

pocket, however, was a .22 shell casing—the same type of bullet that killed Craig Land. *See* Jury

_____

[1] The nicknames of the people involved in this case come from the proceedings in the trial court
and the parties' filings and are used in this Order for consistency and clarity.

Trial Tr. Vol. II, ECF No. 10-8 at PageID.763.

In March 2022, while detained, Petitioner, Lucky, and Slick gave statements to officers from the Detroit Police Department regarding the homicide. Slick and Laf pleaded guilty to the carjacking offenses. Petitioner and Lucky still faced the carjacking charges, in addition to charges for first-degree felony murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. *See* Register of Actions, ECF No. 10-1 at PageID.218; First Prelim. Hr'g Tr., ECF No. 10-2 at PageID.262.

## A.

On April 24, 2002, Judge Norma Dotson from the Thirty-Sixth District Court of Michigan conducted the preliminary examination for Petitioner and Lucky. *See generally* First Prelim. Hr'g Tr., ECF No. 10-2. Wayne County Prosecutor Felepe Hall first called Slick as a witness, who testified that he did not know Petitioner or Lucky, which he has since acknowledged was false. *Id.* at PageID.226–28. Next, Prosecutor Hall called Officer Derryck Thomas, who testified about the details of his March 16, 2002 interview with Lucky,[2] which Judge Dotson excluded against Petitioner as inadmissible hearsay. *Id.* at PageID.229–43. Finally, Hall called Detective JoAnn Miller of the Detroit Police as a witness, who testified about the details of her interview with

---

[2] Officer Thomas read Lucky's March 16, 2002 statement into the record, which stated in relevant part: Lucky stole a Jeep and picked up Petitioner, who "was a hundred dollars short on his rent and needed to hit a lick." First Prelim. Hr'g Tr., ECF No. 10-2 at PageID.237. After finding a target, Lucky stopped the Jeep and Petitioner jumped out the passenger seat, robbed someone with a handgun, and then "got into the Jeep," after which they both split an "Ecstasy pill." *Id.* at PageID.238. Next, Petitioner spotted Craig Land as a potential target and told Lucky to follow him to "see what [he] got." *Id.* at PageID.239. After following Craig Land for a bit, Petitioner told Lucky to hit Craig Land with the Jeep. *Id.* at PageID. 240. Instead, Lucky "pulled in front of him, sort of blocking him in." *Id.* Then Petitioner "rolled down the window," exclaimed, "Run your shit nigga!," and shot Craig Land in the leg, after which he "fell and threw his money." *Id.* Petitioner exited the Jeep "to get the money" and "let off another shot." *Id.* A white van appeared, so Petitioner "jumped in the Jeep and mashed off." *Id.* As they escaped, Petitioner fired two shots at the van, which peeled off, leaving Lucky and Petitioner undetected. *Id.*

Petitioner,[3] which Judge Dotson excluded against Lucky as inadmissible hearsay. *Id.* at PageID.243–59. Neither Lucky nor Petitioner testified at the probable-cause hearing. As indicated, even if they had sought to do so, their testimony was inadmissible hearsay against each other because they were codefendants. *See* Second Prelim. Hr'g Tr., ECF No. 10-3 at PageID.281–82. After considering the evidence presented, Judge Dotson found probable cause against Lucky for the homicide, and she dismissed the case against Petitioner for lack of probable cause under Michigan Court Rule 6.110(F).[4] First Prelim. Hr'g Tr., ECF No. 10-2 at PageID.263.[5]

What happened next to Petitioner, or why it occurred, is not altogether clear. On June 24, 2002, the homicide-related charges were once again brought against Petitioner, and his second preliminary examination was scheduled for July 18, 2002. *See* Register of Actions, ECF No. 10-1 at PageID.218. However, in the interim between the two preliminary examinations, Wayne County

---

[3] Detective Miller read Petitioner's March 15, 2002 statement into the record, which was in Miller's handwriting and stated in relevant part: Petitioner, Laf and Lucky "stole this Jeep," and "stopped at this gas station on Seven Mile and Hayes." First Prelim. Hr'g Tr., ECF No. 10-2 at PageID.255. Lucky went into the gas station and noticed that Craig Land "got some loot on him." *Id.* Against Petitioner's protest, Lucky and Laf agreed to rob Craig Land. *Id.* As Laf drove by Craig Land, Lucky rolled down the passenger window to initiate the robbery. *Id.* Next, Laf cut off Craig Land with the Jeep, then Lucky exited the vehicle and attacked him, so he "swung the bag he was carrying at Luck." *Id.* "That's when Luck shot him." *Id.* Craig land "fell, Luck got back in the truck[,] and Laf drove off." *Id.* Laf spotted a van or truck seemingly tailing them, but he evaded it. *Id.* at PageID.256. The firearm, which Lucky owned, "fell on the grass when [they] got caught for this carjacking stuff." *Id.*

[4] Michigan Court Rule 6.110(F) concerns discharge of defendants when the judge finds no probable cause and provides that:

> If, after considering the evidence, the court determines that probable cause does not exist to believe either that an offense has been committed or that the defendant committed it, the court must discharge the defendant without prejudice to the prosecutor initiating a subsequent prosecution for the same offense or reduce the charge to an offense that is not a felony. *Except as provided in MCR 8.111(C), the subsequent preliminary examination must be held before the same judicial officer and the prosecutor must present additional evidence to support the charge.*

MCR 6.110(F) (emphasis added).

[5] Suspiciously, the first preliminary examination with Judge Dotson is absent from the state-level docket for Petitioner's case. *See generally* Register of Actions, ECF No. 10-1 at PageID.218–20.

Prosecutor Augustus Hutting[6] made a plea offer to Lucky after Judge Dotson bound him over for trial on the homicide. In sum, Prosecutor Hutting agreed to dismiss Lucky's three carjacking charges and charge him with second-degree murder instead of first-degree murder, leaving him subject to 18 to 40 years' imprisonment instead of a life sentence and more, *but only if* he testified against Petitioner and implicated him as Craig Land's assailant. *See* Jury Trial Tr. Vol. I, ECF No. 10-7 at PageID.384; Second Prelim. Hr'g Tr., ECF No. 10-3 at PageID.267–68, 270, 285. As Prosecutor Hutting later admitted, he coordinated with Lucky to make all this happen. *See* Second Prelim. Hr'g Tr., ECF No. 10-3 at PageID.280–82. Indeed, on June 20, 2002, Lucky pleaded guilty to second-degree murder. *See id.* at PageID.285. Four days later, Prosecutor Hutting submitted a new warrant for Petitioner, who was arraigned before Judge Robert K. Costello on July 6, 2002. *See* Register of Actions, ECF No. 10-1 at PageID.218.

**B.**

On July 18, 2002, Judge Mark A. Randon conducted Petitioner's second preliminary examination despite objections. *See generally* Second Prelim. Hr'g Tr., ECF No. 10-3. First, Petitioner's trial counsel, Mr. James O'Donnell, objected that Judge Dotson should conduct the second preliminary examination, because MCR 6.110(F) requires a refiled case to be "reheard by the same Magistrate or Judge who heard the first case." *Id.* at PageID.268. Referring to MCR 8.111(C),[7] Judge Randon responded by explaining that MCR 6.110(F) "allows an exception when

---

[6] Augustus Hutting passed away October 10, 2011.

[7] Michigan Court Rule 8.111(C) governs reassignment of cases and, as relevant, provides that:
> If a judge is disqualified or for other good cause cannot undertake an assigned case, *the chief judge may reassign it to another judge by a written order stating the reason*. To the extent feasible, *the alternate judge should be selected by lot*. The chief judge shall file the order with the trial court clerk and have the clerk notify the attorneys of record. *The chief judge may also designate a judge to act temporarily until a case is reassigned or during a temporary absence of a judge to whom a case has been assigned*.

there's a temporary absence of a Judge and the Chief Judge reassigns the case." *Id.* Judge Randon elaborated that he "had a conversation with the Chief Judge" who "indicated that she [would] reassign the case to [him] in the absence of Judge Dotson, who[] [was] out on vacation." *Id.* Attorney O'Donnell correctly replied that MCR 8.111(C) provides that when the chief judge designates a judge to act temporarily during the temporary absence of the assigned judge, the case returns to the assigned judge upon that judge's return. *See id.* at PageID.268–69. Relying on "the purpose of the exception," Judge Randon stated that "[i]f [Judge Dotson] was coming back tomorrow it might be a different matter" and proceeded to entertain evidence. *Id.* at PageID.270. As Prosecutor Hutting added, Judge Dotson was expected to return in 11 days. *See id.*

Part and parcel to his plea bargain, Lucky testified at Petitioner's second preliminary examination, implicating Petitioner as Craig Land's shooter. *See generally id.* at PageID.284–329. First, Lucky testified as to the nature of his plea bargain to testify against Petitioner. *Id.* at PageID.285. Then, as relevant, Lucky gave testimony that is mostly consistent with the written statement he gave to Officer Thomas on March 16, 2002. *See* discussion *supra* note 2. His testimony is different in that he stated that Petitioner exited the Jeep *before* telling Craig Land to "run your shit." *Id.* at PageID.293. In addition, Lucky testified with much more detail than his written statement about the details of the actual shooting, adding that Petitioner first shot Craig Land in the leg, that Craig Land got up after the first shot, and that Petitioner shot Craig Land the second time "for bullshitting." *Id.* at PageID.294.

Based on Lucky's testimony, Judge Randon found probable cause against Petitioner for first-degree felony murder. *See id.* at PageID.338–39. Consequently, Petitioner was bound over to the Third Judicial Circuit Court of Michigan on the homicide-related charges, where Judge

---

MCR 8.111(C)(1) (emphases added).

- 5 -

Gregory D. Bill conducted the remainder of Petitioner's trial-court proceedings. *See* Register of Actions, ECF No. 1 at PageID.218–19; *see also* Arraignment, ECF No. 10-4; Final Pretrial Conference Vol. I, ECF No. 10-5; Final Pretrial Conference Vol. II, ECF No. 10-6; Jury Trial Tr. Vol. I, ECF No. 10-7; Jury Trial Tr. Vol. II, ECF No. 10-8; Jury Trial Tr. Vol. III, ECF No. 10-9; Jury Trial Tr. Vol. IV, ECF No. 10-10; Sentencing Hr'g Tr., ECF No. 10-11.

### C.

Petitioner's jury trial before Judge Bill began on January 13, 2003. *See* Jury Trial Tr. Vol. I, ECF No. 10-7 at PageID.371.

Just before the trial began, Prosecutor Hutting submitted a surprise written statement from Lucky's mother, the date of which is not in the record. *See id.* at PageID.376. Her statement said that, the day after Craig Land's homicide Petitioner "bragged" to her that he shot a person, and that she was not sure whether the victim was Craig Land. *See id.* at PageID.379–81. When Judge Bill asked why Prosecutor Hutting was submitting the statement "so late," he replied, "You know, Judge, because she didn't really say much at the investigator subpoena. And I guess I forgot about it." *Id.* at PageID.382. Attorney O'Donnell explained that the written statement was made "about a separate incident by the mother of [Lucky] who's accused of the crime who's now coming in and . . . testifying against [Petitioner]." *Id.* at 379. Indeed, her written statement describes an incident in which Petitioner allegedly stole a man's "chain," shot him, then told Lucky's mother, who later apparently located the victim. *See* Jury Trial Tr. Vol. II, ECF No. 10-8 at PageID.615–16.

That written statement conflicted with a separate statement she gave to the police, alleging that she saw Petitioner shoot Craig Land from the gas station where Petitioner and Lucky first spotted him. *See id.* at PageID.616. Yet Judge Bill admitted Lucky's mother's written statement

- 6 -

over Petitioner's trial counsel's strong objection and gave trial counsel "the lunch hour" to prepare for it. Jury Trial Tr. Vol. I, ECF No. 10-7 at PageID.375–82.

In addition, Judge Bill would not allow defense counsel to inform the jury of the substantial nature of Lucky's plea bargain, which supplanted a mandatory life sentence with a sentence of 18 to 40 years. *See id.* at PageID.390–92. As indicated, because Lucky had pled guilty, Prosecutor Hutting could use him to testify against Petitioner. *See* Second Prelim. Hr'g Tr., ECF No. 10-3 at PageID.282. Instead, Judge Bill limited Attorney O'Donnell "to make reference to the fact there's an agreement." Jury Trial Tr. Vol. I, ECF No. 10-7 at PageID.390.

Moreover, Attorney O'Donnell offered a statement that a lay witness, Mr. Gerves Crawford, made to the police at the scene seemingly implicating Lucky as Craig Land's triggerman. *See* ECF No. 10-12 at PageID.1070, 1094–95. But during a recess, Prosecutor Hutting asked Judge Bill to exclude Crawford's statement based on the State's confrontation right because the witness had passed away. *See id.* Judge Bill excluded Crawford's statement. *See id.*; *see also* Jury Trial Tr. Vol. II, ECF No. 10-8 at PageID.612–13.

During the trial, Prosecutor Hutting argued that Petitioner was guilty of first-degree murder as the shooter or alternatively as at least an aider and abettor. *See* Jury Trial Tr. Vol. II, ECF No. 10-8 at PageID.591–92, 598–99; Jury Trial Tr. Vol. IV, ECF No. 10-10 at PageID.945–47, 998. Similarly, Attorney O'Donnell argued against both theories and attempted to impeach Lucky's testimony. *See* Jury Trial Tr. Vol. IV, ECF No. 10-10 at PageID.970–72, 980–81. Judge Bill gave jury instructions for both theories. *See id.* at PageID.1009–12, 1014–16. The jury later asked Judge Bill to re-read the jury instructions for aiding and abetting. *See id.* at PageID.1026–31. Petitioner neither testified nor called any witnesses. Ultimately, the jury found Petitioner "[g]uilty of first-degree murder, felony murder, larceny." *Id.* at PageID.1035.

- 7 -

Fifteen days later, Judge Bill sentenced Petitioner to two to five years' imprisonment for being a felon in possession of a firearm; life imprisonment without the possibility of parole for first-degree murder; and two years' imprisonment for the felony firearm conviction, to run consecutively to all counts. *See* Sentencing Hr'g Tr., ECF No. 10-11 at PageID.1054–55.

## D.

In addition to the two statements discussed above, a third statement (the subject of this habeas proceeding) never made it to Petitioner or his trial counsel. *See* Pet., ECF No. 1 at PageID.18–19. According to its date, Slick made the statement to Detective Miller on March 16, 2002. *Id.* Slick's statement explains that the day after the shooting, Lucky admitted to Slick that he shot Craig Land and that Petitioner was his driver. *Id.*; *see also* Second Prelim. Hr'g Tr., ECF No. 10-3 at PageID.312, 328. Slick's statement also says that Petitioner "said [Lucky] shot the guy and he drove off." Pet., ECF No. 1 at PageID.19.

The relevant facts the Michigan Court of Appeals relied on are presumed correct in habeas proceedings brought under 28 U.S.C. § 2254, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)):

> The victim in this case was a disabled forty-three-year-old man who lived with his father in Detroit. One evening, the victim rode his bicycle to a nearby convenience store to purchase beer. On his way home from the store, he was shot twice and died at the hospital. Near his bicycle, the police found $29 and a bag that contained a broken beer bottle.
>
> Robert Kwanniewski, who is also known by several aliases [including "Lucky"], was with defendant on the day the victim was killed. Kwanniewski testified that he stole a Jeep Cherokee and returned to his home in Hamtramck, where defendant approached him with the idea to rob someone. Defendant, who was armed with a .22 pistol, needed $100 because he was short on rent. Kwanniewski claimed that he and defendant drove around, robbed one man, and spent the $50 proceeds on drinks, cigarettes, and drugs.
>
> Kwanniewski claimed that defendant saw the victim in the instant case that evening, and they followed him away from a convenience store. Kwanniewski claimed that he cut the victim off with the Jeep and defendant approached the victim, demanding money. Because the victim did not cooperate, defendant shot

him in the right hip, and the victim threw $29 at defendant. Kwanniewski became nervous because a vehicle was approaching, and he tried to hurry defendant. Defendant shot the victim again, this time in the left chest, and he returned to the Jeep without picking up the money. While they were driving away, defendant fired two gunshots at the approaching vehicle, which then ceased to follow them.

While incarcerated on other charges, defendant approached the police and made a statement, in which he admitted that he, Kwanniewski, and two other friends had stolen a Jeep on the day in question. Defendant asserted that he was a backseat passenger in the Jeep when Kwanniewski spotted the victim and they stopped the Jeep. According to defendant, Kwanniewski shot the victim twice because he failed to cooperate with a robbery attempt. Defendant did not remember the victim riding a bicycle.

Defendant and Kwanniewski were arrested the following day for an unrelated carjacking. Kwanniewski spoke with the police several days after the arrest, but he did not implicate defendant and did not discuss the instant case. Several months later, defendant sent a letter to the police, requesting a meeting. Defendant discussed the instant case with an officer and made the above-mentioned statement, in which he implicated Kwanniewski. Both defendant and Kwanniewski were then charged with first-degree felony murder.

The trial court conducted a preliminary examination, but only bound Kwanniewski over for trial. Kwanniewski entered into a plea agreement with the prosecution, whereby he pleaded guilty to a reduced charge of second-degree murder in exchange for the dismissal of three unrelated stolen car cases. Kwanniewski also entered into a sentencing agreement, which provided that he serve 18-40 years instead of 270-450 months in prison.

*People v. Baugh*, No. 247548, 2004 WL 2412692, at *1–2 (Mich. Ct. App. Oct. 28, 2004) (per curiam), *appeal denied*, 705 N.W.2d 29 (Mich. 2005); ECF No. 1 at PageID.44–46.

On July 31, 2006, Petitioner filed a post-conviction motion for relief from the judgment, which was denied. *See People v. Baugh*, No. 02-8915 (Mich. 3d Cir. Ct. Wayne Cnty. Feb. 15, 2007), *appeal denied*, No. 280250 (Mich. Ct. App. Nov. 16, 2007), *appeal denied*, 750 N.W.2d 188 (Mich. 2008). Petitioner raised three claims: (1) that the prosecutor committed prosecutorial misconduct by requesting Judge Bill to exclude Crawford's statement; (2) that Judge Bill abused his discretion by excluding Crawford's statement; and (3) that decision of Petitioner's trial counsel "not to move the court to make the courts decision to exclude [Crawford's] statement a part of the

record" was ineffective assistance of counsel. ECF No. 10-17 at PageID.1353–57. Judge Bill denied all three counts on their merits. *See id.*

On July 14, 2008, Petitioner filed a petition for writ of habeas corpus, which this Court denied on the merits on September 15, 2010. *See Baugh v. Palmer*, No. 208-CV-13033, 2010 WL 3623175 (E.D. Mich. Sept. 15, 2010).

On July 29, 2016, Petitioner filed a second post-conviction motion for relief from the judgment with the state trial court, which was denied on the merits. *See People v. Baugh,* No. 02-8915 (Mich. 3d Cir. Ct. Wayne Cnty. Jan. 27, 2017), *appeal dismissed*, No. 337811 (Mich. Ct. App. Sept. 15, 2017) (holding petition was procedurally barred and did not satisfy any of the exceptions in Michigan Court Rule 6.502(G)), *appeal denied*, 911 N.W.2d 703 (Mich. 2018) (holding Petitioner failed to establish that he was entitled to post-conviction relief under Michigan Court Rule 6.508(D)).

After Michigan denied him habeas relief, Petitioner filed a successful motion by which the Sixth Circuit Court of Appeals authorized this Court to consider a second or successive application for a writ of habeas corpus. *See In re Baugh*, No. 18-1848 (6th Cir. Dec. 17, 2018) (finding a prima facie violation of *Brady v. Maryland*, 373 U.S. 83 (1963)).

On January 3, 2019, Petitioner filed a second habeas petition. *See* ECF No. 1. Respondent filed a motion to dismiss the Petition, contending that Petitioner did not file within the statute of limitations, 28 U.S.C. § 2244(d)(1). *See* Mot. to Dismiss Pet., ECF No. 9. Petitioner responded. Resp. to Mot. to Dismiss Pet., ECF No. 11. On February 13, 2021, Respondent's motion to dismiss was denied, and counsel was appointed for Petitioner. Order Den. Mot. to Dismiss Pet., ECF No. 13; Order Appointing Federal Public Defender, ECF No. 14.

After two status conferences, this Court conducted an evidentiary hearing on Zoom

videoconferencing on March 2, 2021 to gather testimony regarding the timeliness of Slick's statement. *See* Evidentiary Hr'g Tr., ECF No. 32. The Petition has since been fully briefed. *See* Resp. to Pet., ECF No. 39; Pet'r's Suppl. Br., ECF No. 40; Resp't's Resp. to Pet'r's Suppl. Br., ECF No. 41; Pet'r's Reply to Resp't's Resp. to Pet'r's Suppl. Br., ECF No. 42.

Two issues remain at this juncture: (1) Whether Petitioner has satisfied the conditions of § 2244(b)(2)(B); then, if so, (2) Whether Petitioner has satisfied the conditions of § 2254(d). He has satisfied neither. The first issue is addressed *infra* Part II, the second *infra* Part III.

## II.

This Court must dismiss a successive habeas petition unless:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

## A.

Petitioner could not have discovered Slick's statement with due diligence.

## i.

During the evidentiary hearing, this Court heard two competing explanations for how Petitioner obtained the statement Slick made to Detective Miller.

First, Slick testified that Detroit police officers told him not to assist the prosecutors unless they assisted him with the charges he was facing, which is why he testified that he did not know Lucky or Petitioner at Petitioner's first preliminary examination. *See* Evidentiary Hr'g Tr., ECF No. 32 at PageID.1576, 1588–89. Slick also testified that he does not confidently remember how he obtained a copy of the statement, when he informed Petitioner about it, or when he sent it to

Petitioner. *See, e.g.*, *id.* at PageID.1571–77, 1579, 1585–88, 1596. In addition, Slick testified that

he did not have an opportunity to give Petitioner the statement while in prison. *Id.* at PageID.1574.

Second, Petitioner testified that in 2013 Slick's then-wife sent a letter to Petitioner that

Slick authored, which vaguely explained that Slick would help Petitioner's case. *See id.* at

PageID.1661. Petitioner elaborated that Slick did not want to get involved in the murder case while

in prison but would help after he got out; they were both worried about his safety in prison. *See id.*

at PageID.1680, 1683, 1684, 1708. Petitioner also testified that Slick mailed the suppressed

statement to him in December 2015. *See id.* at PageID.1663.

What happened next is not in dispute. On January 28, 2016, Petitioner sent a letter to his

trial counsel, Attorney James O'Donnell, asking about Slick's statement and Petitioner's file. *See*

ECF No. 10-18 at PageID.1390–91. Attorney O'Donnell responded on February 2, 2016, upset

that Prosecutor Hutting "purposely sandbagged [him] by withholding the news of Crawford's

death and unavailability," and having "no memory of a statement by [Slick]." *See id.* at

PageID.1392–93. Then an undated FOIA request was submitted to Wayne County by a third party,

Monique Ingram, on Petitioner's behalf. *See id.* at PageID.1394. On March 23, 2016, the Wayne

County Prosecutor's Office responded that it received the request and needed additional time to

look. *See id.* at PageID.1395. On April 20, 2016, the Wayne County Prosecutor's Office denied

the FOIA request, explaining that it did not have Petitioner's file. *See id.* at PageID.1396.

Attorney O'Donnell's testimony at the March 2, 2021 evidentiary hearing corroborates

Petitioner's testimony. First, Attorney O'Donnell testified that he had limited independent memory

of the case, but he refreshed his recollection by reviewing public case files (as he no longer has a

copy of his personal file of the case). *See* Evidentiary Hr'g Tr., ECF No. 32 at PageID.1607. Then

he testified that he had a usual practice of providing a complete copy of discovery and transcripts

to defendants in all his cases. *See id.* at PageID.1606. He also explained that Lucky's trial testimony was "damaging" and that he was not aware of statements made by others implicating someone other than Petitioner as the shooter. *See id.* at PageID.1608. Further, he testified that his trial strategy was to seek to impeach Lucky and that he would have used Slick's statement to impeach Lucky at the second preliminary examination and at trial if he had had the statement. *See id.* at PageID.1609. In his view, Slick's statement corroborates Petitioner's statement arguing he was not the shooter. *See id.* at PageID.1615. But he also testified that the statement was potentially damaging because it placed Petitioner behind the wheel, which would have supported the aiding-and-abetting theory that Prosecutor Hutting pursued. *See id.* at PageID.1615, 1632.

Detective Miller, who took Slick's statement, had no memory of the case when she testified at the hearing. *See id.* at PageID.1642, 1645. Yet she testified that Slick's statement is recorded in her handwriting. *See id.* at PageID.1643. She also testified that her usual practice was to give a copy of the entire police file to the prosecutor's office, including all witness statements. *See id.* at PageID.1649. There is no reason to doubt that the statement is authentic.

### ii.

Petitioner contends that he had no incentive to withhold Slick's statement until 2016 and then file his MCR 6.500 motion in state court. In addition, Slick's testimony is less than clear about when he sent his statement to Petitioner except to the extent that he did not send it until after he was released from prison. Indeed, Petitioner's testimony does not conflict with Slick's; both suggest that Slick did not want to disclose the details of the statement he made to Detective Miller until after he was released from prison for fear of potential harm for being a snitch. And the record indicates that after Slick shared the contents of his statement with Petitioner, Petitioner promptly investigated the origin of the statement and attempted to obtain copies of his file from both his

defense counsel and the prosecutor's office, albeit unsuccessfully. For these reasons, Petitioner

has shown that he timely filed the new evidence with this Court. 28 U.S.C. § 2244(b)(2)(B)(i).

### B.

Although Petitioner's claim is timely, it does not satisfy § 2244(b)(2)(B)(ii). Petitioner's

trial counsel suggested that Slick's statement "would have shifted the blame for the shooting away

from [Petitioner], and it would have left open the possibility that the shooting occurred incidental

to or beyond the scope of the planned robbery or whatever else they were trying to plan with

respect to [Craig Land]." Evidentiary Hr'g Tr., ECF No. 32 at PageID.1609. But he also admitted

that Slick's statement could have reasonably implicated Petitioner as an aider and abettor. *See id.*

at PageID.1615. So even faced with Slick's statement, a reasonable factfinder would likely have

found Petitioner guilty of aiding and abetting the murder of Craig Land. 28 U.S.C. §

2244(b)(2)(B)(ii). That is the same determination the trial court made after reviewing the Petition

on the merits. *See* Pet., ECF No. 1 at PageID.28–31. In this way, Petitioner has not met his burden

by clear and convincing evidence. Consequently, Petitioner is not entitled to habeas relief.

### III.

Even if Petitioner satisfied § 2244(b)(2)(B), he would not be able to satisfy § 2254(d).

### A.

The following standard of review applies to § 2254 habeas petitions:

(d) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim—
    (1) resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the
        Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination
        of the facts in light of the evidence presented in the State court
        proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if it either (1) applies a standard different than what Supreme Court precedent says to apply or (2) applies the correct precedent to materially indistinguishable facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 397, 405–06, 413 (2000). But a state decision that applies a state-law standard is not "contrary to" clearly established Federal law if the state standard is practically similar to the Supreme Court's. *See Robertson v. Morgan*, No. 20-3254, 2020 WL 8766399, at \*4 (6th Cir. Dec. 28, 2020) (holding state decision was not "contrary to" because it applied a state-law standard bearing "some similarity" to the *Brady* standard).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). If the state decision was not "contrary to" clearly established Federal law, then it "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In this way, to obtain habeas relief in federal court, a state prisoner must show that the state court's denial "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Thus, the Petition should be denied if it is within the "realm of possibility" that fairminded jurists could find the state-court decision to be reasonable. *See Woods v. Etherton,* 587 U.S. 113, 113 (2016) (per curiam).

**B.**

The Third Circuit Court of Michigan rejected Petitioner's claim as follows:

In this case, whether defendant is entitled to a new trial on the basis of his proffered evidence is governed by [*People v. Cress*, 664 N.W.2d 174 (Mich. 2002)], and specifically his case is resolved by applying the interrelated first and third parts of the *Cress* test, which require that defendant demonstrate that the evidence is "newly discovered" and that he could not, using reasonable diligence, have discovered and produced the evidence at trial.

Defendant has produced a Detroit police department witness statement made by Ricky Sailes on March 16, 2022. Sailes stated that he was told by Robert Kwanniewski (aka Scotti Trent) that he and the defendant were driving in a jeep together and that the defendant was driving and that while the defendant was driving, Scotti shot a white guy. Sailes further states that the defendant stated to him that "Scottie shot the guy and that he drove off."

After a review of the submitted evidence and applying the *Cress* test, this Court finds that this witness statement will not satisfy the four part test for newly discovered evidence as set forth above and defendant has not carried his burden of satisfying this test and thus is not entitled to a new trial. The presented witness statement is not of such a nature as to render a different result on re-trial, as there was other significant testimony proffered against the defendant, as well as other independent indicia and material evidence that was sufficient to prove the guilt of the defendant.

Specifically, defendant was convicted of first-degree felony murder under a theory of aiding and abetting, which means that both the defendant and Kwanniewski are equally liable for the crime of first-degree murder. They each aided and abetted and helped each other commit the crime.

. . . .

The plain language of MCL 767.39 allows a defendant who directly or indirectly commits an offense to be considered as an aider and abettor. Here, if based on Kwanniewski's version of events, Kwanniewski drove the stolen Jeep and defendant fired the gun that killed the victim. They worked as a team and defendant would be guilty of first-degree felony murder. Alternatively, if based on this newly available witness affidavit provided by Ricky Sailes, the version of events is that defendant drove the stolen Jeep and Kwanniewski fired the gun that killed the victim, again they worked as a team and the defendant would still be guilty of first-degree felony murder. As such, the evidence supplied in this witness statement would not produce a different result on re-trial.

This Court finds that the allegations and evidence presented in this motion are insufficient to warrant an evidentiary hearing, new trial or relief from judgment. Defendant has not shown "good cause" under MCR 6.508(D)(3), nor has he proven actual prejudice. Therefore, for all the aforementioned reasons stated, defendant's second motion for relief from judgment is hereby DENIED.

*People v. Baugh,* No. 02-8915 (Mich. 3d Cir. Ct. Wayne Cnty. Jan. 27, 2017) (emphases

and footnotes omitted), *appeal dismissed*, No. 337811 (Mich. Ct. App. Sept. 15, 2017), *appeal denied*, 911 N.W.2d 703 (Mich. 2018).

**C.**

The state decision was not "contrary to" clearly established Supreme Court precedent. Granted, the state court applied *Cress* and *Grissom*, not *Brady*. *See* Pet., ECF No. 1 at PageID.28–31. And it is "clearly established" that courts should apply *Brady v. Maryland* and its progeny when reviewing habeas claims alleging state suppression of exculpatory evidence. *Ricks v. Pauch*, No. 20-1778, 2021 WL 4775145, at *7 (6th Cir. Oct. 13, 2021). But the *Cress–Grissom* standard is substantially similar to the *Brady* standard.

Together, *Cress* and *Grissom* require the petitioner to show that the new evidence would produce a different result probable on retrial and requires the evidence to have an exculpatory effect. *See People v. Grissom*, 821 N.W.2d 50, 52 (Mich. 2012); *People v. Cress*, 664 N.W.2d 174, 182 (Mich. 2003). Those two elements are akin to the first and third elements of a *Brady* violation: the evidence must be exculpatory or impeaching and prejudicial. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Although neither *Cress* nor *Grissom* requires an independent determination of whether the evidence was willfully or inadvertently withheld (which *Brady* requires), the absence of that element could only make the State's standard more lenient to petitioners than *Brady*. Comity advises deference in that regard, as the State's standard does not narrow or conflict with the federal standard. *See Buck v. MacLaren*, No. 2:14-CV-93, 2016 WL 4471719, at *7 (W.D. Mich. Aug. 2, 2016) ("[T]he four-part test enunciated in *People v. Cress* . . . . is the same test used in *Grissom*, and is based on Michigan and federal precedent."), *report and recommendation adopted*, No. 2:14-

- 17 -

CV-93, 2016 WL 4466556 (W.D. Mich. Aug. 24, 2016). For that reason, the state decision was not "contrary to" clearly established Supreme Court precedent.

## D.

The state decision did not unreasonably apply Michigan's *Brady*-esque standard.

### i.

Petitioner alleges that the State suppressed Slick's statement. A *Brady* claim of suppression has three elements:

> (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;
> (2) That evidence must have been suppressed by the State, either willfully or inadvertently; and
> (3) Prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Evidence is "favorable" if it is "exculpatory or impeaching." *McNeill v. Bagley*, 10 F.4th 588, 598 (6th Cir. 2021) (citing *Strickler*, 527 U.S. at 281). Evidence is exculpatory if it "is material to either guilt or punishment." *Gregory v. City of Louisville*, 444 F.3d 725, 743–44 (6th Cir. 2006) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

Evidence is "suppressed" if it was in the "exclusive control of the government" and not "disclosed during trial." *Id.* at 600. The Government has a duty to disclose, triggered by the potential impact of the favorable but undisclosed evidence. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *United States v. Bagley*, 473 U.S. 667 (1985).

Evidence creates "prejudice" if it is "also material." *McNeill*, 10 F.4th at 601 (citing *Strickler*, 527 U.S. at 289). Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the prosecutor disclosed the evidence. *See Kyles*, 514 U.S. at 433. But the "reasonable probability" of a different result is not a question of

whether the petitioner would more likely than not have received a different *verdict*; it is a question of whether the Government's suppression of evidence *undermines the confidence in the outcome* of the trial. *See id.* at 433–38. Indeed, materiality is not determined by applying a sufficiency of evidence test. *See id.* Instead, the petitioner must show only that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict. *See id.* Further, there is no harmless error review because, by definition, a *Brady* violation cannot be harmless error. *See id.*

### ii.

Slick's statement impeached Lucky, but it did not exculpate Petitioner.

Slick's statement contradicted Lucky's testimony because it provides that Petitioner was the driver of the Jeep and not the shooter. For that reason, the evidence impeached Lucky's testimony.

The evidence is not exculpatory, however, because it is material to neither guilt nor punishment. *Gregory v. City of Louisville*, 444 F.3d 725, 743–44 (6th Cir. 2006). The prosecution argued that Petitioner was guilty of first-degree murder as either the shooter (principal) or the driver (aider and abettor), and the trial court gave jury instructions to the same effect. Granted, Petitioner's trial counsel explicitly argued that the jury should ignore the aiding and abetting theory, and the jury convicted Petitioner of "first-degree murder, felony murder," not aiding and abetting first-degree murder.[8] But in Michigan, there is no distinction between those two crimes. *People v. Smielewski*, 596 N.W.2d 636, 643 n.4 (Mich. Ct. App. 1999). And Slick's statement was that Petitioner admitted to being the driver. In this way, Slick's statement supports the jury finding

---

[8] Notably for habeas purposes, it is unclear whether juries must clarify whether they find a defendant guilty of aiding and abetting independent of the underlying offense. And for that matter, this Court does not have a copy of the jury's verdict form to know whether the jury had the option.

Petitioner guilty of the same crime they found him guilty of at trial. And whether convicted under Michigan Compiled Laws § 750.316(1)(b) or 757.39, the penalty was life without parole and was therefore not material to guilt.

Because the evidence is not exculpatory, the Petition will be denied.

**iii.**

There is substantial reason to believe that the prosecutor withheld Slick's statement. As she testified, Detective Miller took Slick's statement and gave it to the prosecutor's office, as was her practice. And Prosecutor Hutting did not disclose Slick's statement to Petitioner or his trial counsel, despite a duty to do so.

But the suppression of Slick's statement caused no prejudice to Petitioner. Indeed, resolving Petitioner's second MCR 6.500 motion for relief from judgment, the trial court concluded that the suppressed statement "would not produce a different result on re-trial," because it implicated Petitioner as the driver of the vehicle. *See* Pet., ECF No. 1 at PageID.29–31. With Petitioner as the driver, a reasonable jury could—and indeed might—have found him guilty beyond a reasonable doubt as an aider and abettor of first-degree murder. *See id.* As indicated, "[u]nder Michigan law, there is no distinction" between whether the "defendant acted as principal" or "aided and abetted the killing." *Smielewski*, 596 N.W.2d at 643 n.4. In this way, whether evaluated under *Cress–Grissom* or *Brady*, the suppressed evidence did not prejudice Petitioner.

Slick's statement in part undermines the prosecution's theory that Petitioner was the shooter. And based on this Court's review of the record, it is unlikely that Petitioner was Craig Land's shooter; everything—from his eidetic recall of the shooting to the shell casing found in his pocket—suggests Lucky was the shooter.

Even so, Slick's statement supports the prosecution's theory that Petitioner aided and

abetted the murder and, therefore, does not undermine confidence in the jury's verdict. *Hughbanks v. Hudson*, 2 F.4th 527, 541 (6th Cir. 2021), *reh'g denied* (Aug. 13, 2021). Indeed, the Sixth Circuit has held that evidence is not prejudicial if it would have impeached a witness who not only admitted to a willingness to lie to prevent incarceration but also was cross-examined regarding his plea agreement with the Government that resulted in a favorable sentence. *Jefferson v. United States*, 730 F.3d 537, 551 (6th Cir. 2013). Those elements were present at Petitioner's trial. In addition, though Judge Bill conceded at sentencing that "[t]he jury elected to give a lot of weight to the credibility of [Lucky's] testimony," the jury relied on much more than Lucky's testimony to convict Petitioner, including testimony from nine other witnesses. *See Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009); Jury Trial Tr. Vol. II, ECF No. 10-8 at PageID.583; Jury Trial Tr. Vol. III, ECF No. 10-9 at PageID.816; Sentencing Hr'g Tr., ECF No. 10-11 at PageID.1054.

Notably, the record reveals several incidents of potentially egregious prosecutorial misconduct. To wit, the prosecutor made a plea offer and sentence agreement with Lucky, a less-than-reliable witness who was important to the jury's verdict, and then suppressed evidence that would have impeached him. However, under the standard established by the Supreme Court, which the state court reasonably applied, the suppression of Slick's statement was not prejudicial to Petitioner. For that reason, there was no question of confidence in the jury's verdict and no *Brady* violation. *United States v. Busch*, No. 20-4065, 2021 WL 5133178, at *5 (6th Cir. Nov. 4, 2021).

This Court's "role is limited to applying the law's demands as faithfully as we can in the cases that come before us." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1753 (2020). In the United States, "the Law is the publique Conscience, by which [people have] already undertaken to be guided." THOMAS HOBBES, LEVIATHAN 210 (Barnes & Noble 2004) (1651). And by "ground[ing] our laws in popular consent, and by working toward a regime in which all citizens have equal input

into the content of those laws, we increase the extent to which any given individual judged under those laws may be said to have judged himself or herself." Sherman J. Clark, *The Courage of Our Convictions*, 97 MICH. L. REV. 2381, 2404 (1999). To that end, "we strive to couch our laws in general terms—applicable equally to all citizens—with the aim being that the law itself, rather than individual men and women, will sit in judgment." *Id.* In this way, what may seem an injustice to some is not necessarily a threat to justice.

Because the suppression was not prejudicial, the Petition will be denied.

## IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000). When a court rejects a habeas claim on the merits, the substantial-showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

In applying that standard, a district court may not conduct a full merits review and must "limit its examination to a threshold inquiry into the underlying merit of [the petitioner's] claims." *Miller-El,* 537 U.S. at 323. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

- 22 -

Although this Court believes its ruling is sound, reasonable jurists could find it debatable that no reasonable juror would have found Petitioner guilty of first-degree murder if faced with Slick's statement. *See Phillips v. Pollard*, No. 1:20-CV-13326, 2021 WL 5234507, at *5 (E.D. Mich. Nov. 10, 2021). This reasonable disagreement exists because the *Kyles* Court emphatically stated that the question of materiality "is *not* whether the defendant would more likely than not have received *a different verdict* with the evidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Rather, the crux of materiality is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435.

In this way, suppressing Slick's statement might have been a material omission, as other jurists might reasonably believe the suppression or Slick's statement undermines confidence in the jury's verdict. Indeed, it is less than clear whether a reasonable juror would have found Petitioner guilty as an aider and abettor of Craig Land's murder for simply driving Lucky to a robbery knowing he was armed; Petitioner did not necessarily know Lucky intended to kill Craig Land. *People v. Buck*, 496 N.W.2d 321, 327 (Mich. Ct. App. 1992) (per curiam) ("To be convicted of aiding and abetting first-degree murder, the defendant must have had the intent to kill or have given the aid knowing the principal possessed the intent to kill."), *rev'd in part on other grounds sub nom. People v. Holcomb*, 508 N.W.2d 502 (Mich. 1993).

Surely, there is less confidence in jury verdicts arising from courts that excuse prosecutorial finagling. *See Preterm-Cleveland v. McCloud*, 994 F.3d 512, 548 (6th Cir. 2021) (Bush, J., concurring) (noting that the Supreme Court has found "preserving confidence in judicial integrity" to be a compelling interest (citing *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015))). Indeed, "'[t]he price of [such] dishonesty is self-destruction.'" CAROLYN PRICE, THE WORDS OF EXTRAORDINARY WOMEN 22 (2010) (quoting Rita Mae Brown). For these reasons, a certificate of

appealability will issue. And, as indicated, Petitioner's claims are not frivolous. For this reason, he will be permitted to appeal in forma pauperis. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).

**V.**

Accordingly, it is **ORDERED** that the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that a Certificate of Appealability is **GRANTED**.

Further, it is **ORDERED** that Petitioner is **PERMITTED** to appeal this Opinion and Order in forma pauperis.

Dated: December 17, 2021               s/Thomas L. Ludington
                                       THOMAS L. LUDINGTON
                                       United States District Judge